in cases two through six this morning. We'll begin with Appeal number 21-2925, the United States v. Shawn Baldwin. Good morning. Good morning, Your Honors. May it please the Court, my name is Jennifer Bonjean and I represent the defendant, Appellant Mr. Baldwin. Mr. Baldwin was denied his Sixth Amendment confrontation rights when the government presented Luca Tanuta's testimony by way of a foreign deposition that neither the defendant nor even his counsel attended in person. The taking of the deposition itself was inconsistent with the demands of Rule 15 and the use of the deposition, the admission of the deposition was contrary to the United States Supreme Court precedent in Maryland v. Craig. At no point did Mr. Baldwin receive a face-to-face physical encounter and the government never identified. Indeed, the district court never asked. It was never a conversation whether a public policy interest superseded Mr. Baldwin's right to a physical face-to-face encounter. Ms. Bonjean, can you tell me where precisely in the record I can find Mr. Baldwin's request to attend the deposition in London? I anticipated that question, Your Honor. What occurred, if we look at the August 21st transcript, after Mr. Baldwin, through his counsel, objected to the Rule 15 motion pretty much on all grounds, wasn't as specified as perhaps I would have preferred, but she did, in fact, object on all bases, and then the judge indicated that he was inclined to grant it, and the U.S. attorney, apparently recognizing that there might be some confrontation issues, says, So you're contemplating that we would all go to London, and that's at page 11, at the bottom of the page, Your Honor, Mr. Getter. So you're contemplating, Judge, that we would all be here with the victim in London or that we would all go to London and you're hooked up here. And he says, Well, I would love to go to London, but that's not how it's going to work. So everyone is going to be here except the witness, and you'd have the video monitor here. The court reporter could take it contemporaneous. Mr. Getter, apparently recognizing that there might be issues, says, Well, if the defense is in agreement, I'm fine. The judge cuts him off and says, Well, they're not in agreement. They're objecting and preserving their arguments under Rule 15. And I think it is true that, and I have to acknowledge that at that point, defense counsel did not interject and say, Judge, we want to be present, we demand to be present, or anything of that nature. But the judge did definitively rule at that moment that the procedure would involve what he set forth. This would involve the parties, the defendant being here in Cook County, in this courtroom, in this building, and that the opponent would be in London. That was a definitive ruling. We argue that the judge noted multiple times there and again on multiple occasions, again on September 27, 2018, and then on January 14, 2019, that the defense had preserved its rights under Rule 15. Now, I know that the government suggests that the defense had to do more. They had to say, Wait, we want to be physically present. We want to be physically present. And our contention is that this was preserved, but beyond that, the court had an affirmative obligation under 15C3, the court had an affirmative obligation to make case-specific findings consistent with the rule when the deposition is taken outside the United States. There's no language in there that says he has to demand his right to be taken out of the – Right, but the record is abundantly clear that this man was not coming to the United States to testify at trial. It couldn't have been any clearer. I respectfully disagree in this regard. It is beyond the subpoena power of the court. Absolutely. And the government offered and the judge offered to continue the trial, and his lawyer said in absolutely definitive terms, He is not coming to the United States. That's it. What more could have happened here? Well, I think the judge could have held a hearing and had the deponent and his attorney up here via Zoom to say, Listen, this is an important matter. We really need your testimony here, sir. And don't you think the government wanted him here just as badly as the defendant did? I mean, that's what usually happens in these cases. I mean, the government doesn't want to put on video testimony. The risk is that the jury isn't going to listen, and it's their witness. They want the jury to listen to the witness. The defendant, I mean, I'm just saying from a trial strategy, sometimes it's better off for the defendant to put on the government's case through depositions. I understand, and you may very well be right. That is typically the case that the government wants their witnesses here in person. I'm not suggesting that they didn't want him here in person. I do not think that a single line of an email sent from a lawyer to the defendant is a facto, a showing of unavailability, either under Rule 15, or as implicated by the Sixth Amendment. There needs to be more. All right, in this case, let's say we agree with you on that issue. Should we reverse? Yes. Why? Well, the question is, do we reverse just on these two counts, or do we reverse all counts? And I don't know if the court is asking me. Either way. Okay, well, the easier question is obviously on these two counts that he was convicted of that relate to Mr. Tanuta's testimony. And the reason why this court must reverse is because the government has not demonstrated that the heir was harmless. And the United States Supreme Court advises this court what to look at when determining whether the government can satisfy its burden of showing that this constitutional violation was harmless beyond a reasonable doubt. Yeah, see, one of the things we're doing in the colloquy here is I think we're merging, we're deeming the Rule 15 analysis to be synonymous, coterminous with the constitutional analysis. That's far from clear to me. Yes, I think that's what happened in the district court, Your Honor. And I was attempting to address the question. Go ahead. But I will say this. I could not agree more that the government brought its motion as not only a to also admit it. That was all done in a single motion. In fact, the exact language is motion to preserve and present trial witness testimony. So in some cases you're preserving witness testimony because someone's sick and maybe later down the line they become available and it makes sense to do that. This was different. We're on the eve of trial and what the government did is said, we know we're not going to get him in. We want to preserve his testimony and it's really for the purpose of presenting it. But isn't that exactly what they should have done from a confrontation clause standpoint? I mean, I just don't see any constitutional issue here in that regard because it seems to me that the judge conducted the deposition as if it was a  He was on the bench wearing his robe. The parties were in the courtroom. The deponent was on the video screen. The entire purpose of the deposition was to preserve the testimony for the trial that would begin a week later. It wasn't like it was a discovery deposition of a very ill witness who was about to die or something. And the judge deferred the sixth amendment decision to a year later when the trial was occurred. That's not what happened here. No, I agree. And that would be prohibited. You can't use depositions for discovery in criminal cases by and large. But I, where I take issue is that there was no physical confrontation at any point though. There was no physical confrontation between Mr. Baldwin and the deponent either in this deposition. And there was no physical confrontation in the courtroom. It was a, it was barely a virtual confrontation. Question for you. If the government had paid for Mr. Baldwin, when to travel to London and sit through this deposition, would there be a confrontation clause issue in your view? Well, I think we're in much shakier footing. If he was off, if he was offered and was able to go and decided to go to London and sit through the deposition, he would have a harder time saying he never had any opportunity to physically confront the opponent. I don't know that I would fully give up the sixth amendment issue because I do think there is a difference between physically confronting a witness in front of a jury versus physically confronting the witness in some conference room somewhere. So, um, but yes, we are in closer footing. I don't think our argument would be as strong if those were the circumstances, but he never received it. And pursuant to the United States Supreme court, Craig versus Maryland. Um, he was entitled to that physical face to face confrontation. And there are only narrow exceptions when that can be, uh, let's go back to judge judge curse. At the beginning, asked you about the request under rule 15.  My question is where, where did your client preserve his confrontation clause separate from rule 15? Where did he preserve the confrontation clause objection? It definitely did not happen at trial. Well, the, the, because the, the deposition, as you articulated, the deposition was read in, right? But it wasn't read in over objection on a confrontation basis. Well, I think it was judge, uh, you know, I, uh, I want to appoint the court specifically to the day that it was being introduced into evidence was January 14th of 2019. Um, and defense counsel said, we are judge. I have one very short thing just for this record. Your honor has already ruled on this proceeding, but just for the record or the appellate record, if necessary, I would like to renew my objection to these proceedings as contemplated. The government now has all the exhibits that the defense could use, which means the government has essentially gotten our work product and our thought processes. In addition, because of the technology and the way that we're presenting this should something Kyle's come up and that we wish to use during our cross examination will be prohibited from using it. I don't believe that any extraordinary, the judge cut her off and said, well, let me interrupt you on that, that, that, that is not the case. If there's something you think requires us to have another session and there's an appropriate predicate for it, you'll have the opportunity to go ahead.  and we're okay. If you, if given you all the benefit of the doubt on that, where, where was the, I mean, that is not confrontation language and I don't think, but I'll give you the benefit of the doubt on that for discussion purposes here, but pretrial around the time of this, it all seemed to me to be about, it's the rule based objection. So I, I was frustrated as I think the court is in reading the record, but I don't think that it can be, those objections could be read that narrowly because once again, the motion was brought because you would expect defense counsel to say drawing upon Coy Crawford, raising questions about whether Craig survives Crawford, you'd expect the dialogue to occur in sixth amendment terms. The frankly, the way you brief it, that's the way you would expect the colloquy to happen. And when you look at the transcripts, the August and the September transcript where, where this was featured, it's just very difficult for me to see. I can see the rule based objection, but it's very difficult to see the sixth amendment objection.  Well, counsel did not cite to Coy or cite to Craig or even cite to Crawford. I think what she does say throughout is that, and I would point the court or use or forget, forget the citations. If you say, well, we're not going to, we're not going to hold anybody to a memory test on citations or something, but not even uttering things like my client has a right to personally confront this individual who the indictment makes very clear is a, is a big part of this alleged scheme. I do think there's not even language like that.  there's something close. Let me, let me read it to you and see if you agree. She and again, this is at I think the August 21st hearing where she says to allow the government to depose this witness, have him testify outside the presence of the jury so that the jury is not in a petition, in a position to be able to observe him one-on-one from the witness stand where it should be able to, where he's not subject to the courtroom and also to looking at your honor, myself and Mr. Baldwin. We believe that it would be prejudicial for the deposition to go forward. So she is talking about the right to confront him in the courtroom and the right for Mr. Tanuta to confront Mr.  Um, and again, I think this was slightly confused because the government brought this motion kind of as both a rule 15 motion to preserve it and to admit it. So it got conflated. And I think the district court judge was looking at it primarily in terms of rule 15 and seemed to me to be operating under the assumption that if rule 15 was satisfied, there would be no confrontation issue. Um, and I think that your argument is that's how it was litigated in the district court because of the timing of the trial. And that's why I think the record's a little conflated on the questions of confrontation. So what, for instance, when they were arguing about unavailability are unavailability for rule 15 purposes is maybe a little different than unavailability for confrontation clause purposes. Nobody was making that distinction below because they were arguing unavailability really for both purposes because everyone in the courtroom understood that this deposition testimony was not merely being preserved. It was actually going to be the trial testimony. Um, and I do believe that despite the little bit of, I would call some sloppiness around making the distinction between, uh, the rule 15 obligations versus the admission of the material, um, or the, a testimony under the sixth amendment confrontation clause. I do think that she got it done. I think she got it done in the sense that she talks about confrontation. She talks about the right to face Mr. Baldwin one-on-one.  and so, you know, I, I, I think even though that's just, let's just say for argument's sake that it was in some way forfeited. I don't think it's an, a waiver. I don't think it's any type of waiver, but I agree with that. Um, I think it would amount to plain air. We are talking about, um, the types of constitutional violations, um, that would, um, rise to the level of plain air. It affects his substantial rights, a sixth amendment confrontation rights. Um, and, and he was at all times denied this face to face encounter. In fact, I would argue that he was even denied basically a virtual encounter because you, you, you see some of the procedures that courts use across the country when looking at the case law and what was used, um, in the district court here was kind of the, it seemed like the worst of all possible serious scenarios because the, uh, it was like a one way, um, closed circuit television, like they used in, that was at issue in Craig because you could see Mr. Baldwin in the background, um, seated at the table, but there was no real ability for the deponent to even see Mr. Baldwin. I mean, I've looked at the video, the court has the ability to look at the video. I think I embedded a little photo, a photo in my, I reply brief and it really would be no way other than to see this just vague figure that you wouldn't even be able to recognize him,  or be able to identify him. So, you know, this is a scenario where, um, there was barely a virtual encounter. And I think if the court is inclined to find that it was not preserved, um, that it would rise to the level of plain air. Um, I think on the question of harmlessness, and I don't know if that's where judge Kirsch was going earlier, but maybe we're there at this point. Um, the U S Supreme court has held that there are factors to look at and determining whether the government satisfies its burden of establishing that the constitutional violations harms beyond a reasonable doubt. Those include the importance of the witnesses testimony. That can be a, no doubt here that the, those counts at least road entirely on to news testimony. Um, whether the testimony was cumulative, not, it was not, there was no real other evidence that established those counts. There was some documents that they offered to try to corroborate it, but nothing on its own. And the overall strength of the prosecution's case, while it might be, you could look at the other counts and say there was a strong case in some of the other counts or,  but when looking at these particular counts, no Tanuda, no, no conviction on those codes. They just simply could not have met their burden. Um, and save the remainder of your time. You're cutting into your rebuttal. It's totally up to you. That's fine. Thank you, your honor. Okay. Thank you very much. You're quite welcome. Okay. Let's hear from the government on the screen. Long. Good morning. Good morning, your honors. There was no definitive ruling by the district court on the rule 15 or the confrontation clause that prevented the defendant from requesting to go to  And I say that because the court, it, it's got to all be viewed in the context of the entirety of that discussion. And the court basically breaks it down into two steps. There's the issue of whether there will be a deposition and absolutely the defendants objected to that strongly on numerous grounds that there be a  But the court moved on and hypothetically said, if I were to grant this deposition, it went to step two. How would that deposition be conducted? And in that the court clearly set forth the procedure that contemplated the courtroom in Chicago. And there's certainly in, in, in discussion with the government, certainly the court reiterated, that's how it saw it going. But after doing that, the court asked a question and the question was, is this something that parties could have make happen the way I've described it? And the defense lawyer at that time had every opportunity to say, no, your honor, because we're invoking our right. The defendant's right under rule 15 and the constitution, if she wanted to, to be present in London for that. Your point is that if the judge didn't contemplate the defendant going to  that doesn't matter because the defendant didn't ask. Exactly. And her response to that question clearly understood Matt. Am I on board with this? Because the defense lawyer's response was if your honor is inclined to grant this motion, that would be our preference. It would be our preference not to go to London. And that made sense from a strategic point of view, because as we also, you know, I won't bore you with the citations are in our brief, but the record at that point, while the deposition ends up getting continued because of the health of the defendant's father, at that point, the defense has made clear really that they don't want a large continuance here. And as your honor pointed out,   Maldonado, no, Maldonado. I'm sorry, your honor. I'm still learning everybody's names. Um, that as your honor pointed out, this would have been at the government's expense because it was a court appointed counsel. It would have taken time. There would have been delay. And at that point in time, delay was not something they wanted. There was a strategic reason. And I would go further. That wasn't the only opportunity that the defense had to ask and to raise confrontation clause specifically and, um, and rule 15, because then the court after granting it says with agreement of the parties and these sites are all in our brief with agreement of the parties, I will preside simultaneously. I E in the manner I described. And he goes on to say, the court goes on to say, I have a question about this proceeding. Of course. Um, I never had a judge appear at a deposition and everyone's calling this a deposition and talking about rule 15. Um, but what happened here seems like recorded trial testimony to me, right? The judge is there contemporaneously. What would have been sidebar is clipped out. And you know, the government at one point when there was a discussion at a later hearing about live versus recorded said, Oh, we'd have to get a waiver. Yes. How come the government didn't get a waiver here? Because, well, I would say two reasons. Yeah. First off is I think from the government's view and the court's view, that's what I was getting to with when the court said by agreement of the parties, the court, I believe the government, I was a counsel there, but it seems to me from the record when she, when the defense lawyer said that would be my preference, the government understood the court understood that this is how the defendant wanted this to be conducted. And so there was no need, whereas in that juxtapose it to the sequence of events that you're honors pointing to when the defense lawyer says, well, there are,  you know, where were the government pro proposes taking it during trial because there'd been continuances and the defendant did not want a continuance of the trial date. The government proposed it and the defendant said, well, we still think there are confrontation issues and the government heard that and said, and she said, but if you're going to do it, she didn't say that would be my preference when she raised it and suggested that there could be an issue. And this would now put it also remember putting it during trial as opposed to before trial in a rule 15 deposition during trial does raise Craig issues. We agree with that. That is a Craig problem. A pre trial before trial deposition is not, that's in our view, a Crawford issue, but leaving that aside, the court set it up that way,  so that the rights of the defendant would be severely and completely protected. And I want to add one. I hope I've answered you on that point where the court, where the government saw the distinction in what was being said and where the cart saw the distinction in what was being said. In one, she said it was her preference and another, she raised the confrontation issue. And so at that point, the court wanted, the government wanted it clarified. And I think the government wasn't in a position when a defense lawyer says, this is my preference indicating this is my strategy to then question that  Um, and Cooper would say the same Cooper where the court, um, said that, uh, an attorney basically through its statements, through its actions can waive a sixth amendment, right? But once I got odd to me, what, what I can't figure this out, Mr. Baldwin and his counsel at the time, they definitely seemed, I think what you're saying is accurate, but aligns with what I've read. They definitely seem to have a concern with the live, the live trial remote testimony option. Yes. That your colleague just said, Hey, well, why don't we try it? Why don't we think about this because of the timing issues. And he definitely did not like that option. Mr. Baldwin did not. And the confrontation word was uttered in that context. Yes. But he seemed to prefer what I'm going to call the rule. 15 non live version. And that preference was accompanied by no confrontation concern that I can discern. Why is that? Why does that make any sense? I think when they were dealing with the. Rule 15 issue and going to London, go, it was going to London that was going to delay the trial. And so the way, by the time they're getting to the, during the trial. I get the going to London part. And I, that may be, that may be right from the trans. I get that. That time is of the essence and all of that. But. Ms. Bonjean is right. When she says. Make no mistake. Nobody is disillusioned about the rule 15 testimony. The rule 15 testimony is going to be admitted at trial. There is judge Kirsch was a listing there, but there was not. I mean, the chance seems like 0% that that the witness would decide after the rule 15 deposition to come to Chicago and testify. That did not seem like it was going to happen at all. So the, so both parties knew that whatever rule 15 testimony was taken from the from London, that it would then in turn be offered affirmatively by the government and it's case in chief at trial. But for reasons that I can't figure out the defendants confrontation concern just evaporates. I think I don't get, I don't understand that. I think it's because they happen at two separate points in time. And the first point in time is before is when the, they're just talking about taking the deposition. And at that point in time, what she's concerned about is yes, let's do it this way. The court will preside. We don't have to go over to London. There won't be any delays. Now there's been a delay in the deposition because of the health of the  The trial date set for October 29th. They're now appearing in court in October. They need to set a new date for the deposition. And at that point, the defendant doesn't want to move the trial date for the deposition. And so they're trying to figure out a time in there to do this deposition. And so the question is, do we figure out a time to do the deposition at which the defendant's not going to London because he never wanted to go. In fact, I should point out standing up here if she said if the defendant decides to go to London, there's never been any assertion that he ever wanted to go to London, but leaving that aside, they're now at a point where the deposition is happening without him in London because that was their preference. And now it's a question of, do we do a deposition before trial? The, uh, this procedure that the court set up or do we do it during trial? And her preference was not to do it during trial to do it before. And there would be strategic reasons for that. Then going into trial, you know what that witness is going to say. If it happens during trial, it's hard to call it a deposition. Absolutely. And that's what the court said. And that's what she said. But that's the only reason I can come up with barrier on her. But I would say going back to it, that the judge, by instituting the procedure in this way, I believe did it in a way to protect the defendants, um, cross examination rights and to make sure that that cross examination was fulsome. And I would, before I even get into the specifics of that, I want to point out one thing that I think is not correct on the way they're presenting this video to the court. The video was done under the auspices of the court. It was the court personnel that did this video. And what she has put in her brief, that picture, we supplemented the record with the original video taken and then the redacted version of it. The record's not developed because this was never raised. So we didn't have a chance to put on this evidence, but I think the court can take just as a matter of common sense and experience with videography that Mr. Tenuto was not sitting there looking at a large picture of himself. He would, that's, this is what we were seeing from the Chicago courtroom and what the jury saw. Presumably he is now testifying to a video screen that those little boxes up there were enlarged. There's no reason to think he's looking at this big picture of himself with the little boxes. The little boxes, I believe, again, we can just take from common sense, are what Mr. Tenuto were blown up in his, so that he would have seen a big picture of the attorney questioning him, be it the prosecutor or defense counsel. Is there anything in the record about the platform that was used or, or the protocols for this deposition? Because I think it depends on the settings on Mr. Tenuto's side, what he would have seen. Because this wasn't raised, this was not raised before trial, before the deposition, it was not raised at the deposition where she raised, as she defense counsel was saying, raised an objection to there being a deposition, but wouldn't have that have been the perfect time to say, and here sits Mr. Tenuto, Mr. Baldwin, he should be there with Mr. Tenuto, not a word about that. I went, I went through the deposition and I was looking for any statement beginning, middle, or end where either Mr. It would have been through counsel where Mr. Baldwin said, I object to this whole endeavor, this whole project that we're about right now, because I'm not there with the witness. That's okay. Nor is there a statement in there that I could see where defense counsel says on behalf of Mr.  we can't see Mr. Tenuto. We're, we're, we're cross-examining a, a blank screen or anything. There's, there's no statements like that.  Tenuto, but that Mr. Tenuto couldn't see Mr. Baldwin, but there's nothing to confirm any of that or to raise a reservation about the questions that it'd be good to know the answers to. Absolutely. And the government, the court, there's no opportunity to develop the record on this. This was never even raised post trial. And I would submit that that is because trial counsel believed she had acquiesced in this whole procedure and that her, her confrontation clause arguments, her fifth rule 15 arguments, none of them involved Mr. Tenuto being in London. And I would add, and this is at the record at 42 page two, this was an extremely experienced defense counsel. As she sets forth there, just because in a context of a different context, she's practiced in this district for 18 years, done dozens of federal trials. She was quite capable of engaging the court and making requests. They did not want to go to London for this deposition. And I think it, when you read the record in its entirety, that just comes through repeatedly. And if you're not going to find waiver, I understand, but I do not think this can be plain error. It is a forfeited thing. And as far as under rule 15 rule and those findings there are in subsection C3, it does definitely provide that if you have a defendant who the court is not going to permit to go to a foreign deposition, there are findings to be made. However, that has to be read in the context of 15 C2, which says except is authorized by subsection C3, a defendant who is not in custody has the right upon request to be present at the deposition here. There was no authorization under C3 prohibiting the defendant from going to that deposition. So therefore a defendant not in custody has the right upon request. There has to be a request. There has to, the judge was not required under rule 15 to put the defendant on a plane and force him to go when there was no request for him to do so. And that's the same reason. Just in the interest of time, would you go ahead? Do you want to finish? That's the same reason why there's no plain error under rule 15. Yes. Okay. If it's okay with you, I want to ask you a question about a different issue and it's this there's Mr. Baldwin, as you know, challenges the district court's admission from testimony of, I don't know if it's nine or 10 witnesses other, other than those identified in the indictment. And he challenges it on the basis that it's a 404 B like other bad acts evidence. Okay. And I, as I understand the argument, it's that, well, those other nine or 10 witnesses were not testifying as to, I think it was seven substantive counts that went to trial, correct? One of them was dropped.   And therefore, and therefore it must be for, it had to have been 404 B but didn't the indictment contained scheme allegations. Yes. That dated back to 2006 in my, the way I read the record is that those other nine or 10 witnesses were speaking to, to the scheme. In other words, to prove the allegations of the Ponzi scheme that were set out in the indictment. Is that, is that a correct or mistaken reading? I'm sorry. That is absolutely correct. And the indictment expressly alleged that the victims totaled, I believe over a dozen or some amount that was over. In other words, there was a specific allegation in the, in the indictment that included an amount of victims as being in excess of, I'm afraid I don't recall the number exactly in front of me, but it's definitely in our brief in excess of a dozen. And that was beyond the victims. In other words, the indictment never limited itself. The scheme never limited itself to the seven victims who would have been identified in, or fewer than seven, the five or so victims who are identified in the wires and the scheme did go back. And the case law, this court is clear that it, you know, that the scheme can include more than just those victims alleged in particular wire transfers. So your Honor is absolutely correct. Returning. I don't know if the court had any other questions about, about rule 50, you know, about the not being in London issue or the application. I would just add that, you know, to, on the, on the constitutional issue there, that it is the government's position that it would be plain error review, if not waiver, then plain error review. And that it's the government's position that Crawford applies here. And under Crawford, there was full cross-examination and there was there, and he was an unavailable witness. And to the extent Craig arguably, the reason we don't believe Craig has any application here, Your Honors, is because Crawford specifically does, first of all, Craig dealt with that situation where testimonies coming in during trial by an available witness, who's just testifying from another location, right? And so in that case, a child victim who's testifying by one way outside the courtroom. That is, and even the case they cite, Yates and et cetera, don't apply, you know, just make the distinction between a before, before trial statements by an unavailable witness, subject to cross-examinations being governed by, by Crawford. The difficulty that I have with that is that one, if the Supreme Court has been crystal clear with lower federal courts like us, that unless and until we, the Supreme Court overrule our precedent, you're not to engage in tea leave reading or anything like that. And it's, I agree, Crawford was a substantial shift in the court's confrontation clause jurisprudence. There is no question about that. And they definitely moved away from a liability, but they have not overruled Craig. Absolutely. And I'm not asking you to, what I'm saying is, Craig has nothing to do with this case. In other words, Craig dealt, deals with a completely different situation. And this is a Crawford situation. This is not happening during trial. This is Crawford. It is in a prior to the trial examination. And I would say, It is with a hundred percent certainty that that testimony a week or two later is going to be read into a trial transcript. Yes. But even so was the case in McGowan and Cannon and any, in any, in any such case, I would say, even if it wasn't certain and then we read it into the trial, it would still be governed by Crawford. And Crawford deals with the whole issue of when you read it into a trial. Crawford's about statements made, testimonial statements. Have other, have other circuit courts split it this way? Okay. So here's what happened. This has never really been decided by any circuit court except one, Abu Alu, which is cited in our brief. Fourth Circuit case. No discussion of Crawford. It's assumed from the beginning. I read it. I saw it. This is Craig. So there's, and here's the problem with applying Craig. Well, first of all, I think Crawford says in a, can I continue with just this answer? Please. I think what Crawford says is in, as your Honor knows, Crawford did away with judicial assessments in the context of the pre trial, before trial statement, testimonial statement, statement made with an eye toward testifying at trial. It did away with judicial assessments like reliability and like this, this public policy. And here's the problem with putting the public policy test in saying it's double in to Crawford. And here's the danger I see. Under, under, under rule 15 or just common sense, a defendant could say who's in custody under rule 15 right now, here's the hypothetical. I'm a defendant. I'm in custody. I want to go to this deposition in London in this fraud case, but I'm in custody. And the judge, or let's say it's not in London. Let's say it's in Saudi Arabia or somewhere and the, and the Saudi Arabia government refuses to let me come or the Marshall say, we can't assure your safety there under rule 15. He doesn't have to be there under their analysis and Abu Ali's analysis applying this public policy. We, the government would have no opportunity to take that witness's testimony, no matter how material it was to the case, because it's not terrorism, because it can't just be any crime. This public policy issue test doesn't fit this scenario where you've got an unavailable witness in a rule 15 context. And, and, and I would also add that plain error review where this hasn't been brief below where it hasn't been considered below. It's just not the place to determine this issue and that it wasn't clear whether whether Craig applied here and there was no request that it do. Okay. We would just ask that you affirm the sentence and conviction of the defendant. Okay. Very well. Thanks to you. You definitely had a couple minutes left. The government wants to call this just a pretrial statement. Okay. Those aren't this wasn't a pretrial statement that was obtained during the course of discovery. It was trial testimony. In fact, the government itself calls it trial testimony in their motion. There's no question that it's trial testimony since it's trial testimony. Clearly Craig does apply. And even if Crawford did apply, Crawford didn't do away with the right to have a physical face-to-face confrontation. Crawford doesn't really even change the analysis. Crawford still requires that there be a physical face to face-to-face confrontation that never occurred whether or not there was a waiver of that right is a different issue, but the Crawford Craig is just a red herring type of argument because whichever whichever authority the court looks to the results is the same because we have a defendant who did not have the opportunity for this, this physical encounter with his accuser. I would also point out that the record shows, and I just want to draw the court's attention. I have a little bit of different take. It is true that after counsel believed she had preserved this issue for review, she said, well, whatever you want to do judge or whatever, we'll go by. On this issue of doing the two-way circuit television live, she was open to it. And then the court says, yeah, but it's not a deposition then. And he even asks her at some point, and I can't remember exactly when, but maybe this was earlier. Wouldn't you still have this confrontation, right? She says, well, not in the same way. And then she says, this is not really a deposition, but she says, I still think that there's some confrontation issues, but we've covered those. So again, I hear the court. I would have liked her to separate out a little bit, her rule 15 arguments from the confrontation arguments, but I do believe that she believed she was preserving her confrontation rights. And I think she was led to believe that she was in part by the judge who eventually was like, I got you. I heard you. Your issues are preserved for appeal. And the only last point I did want to make in response to the court's question about the other bad act evidence is that I understand, anything can come in in a scheme, I guess, but there is a 403 analysis that we also raise. And for that reason, we'll rely on our briefs, but appreciate the court's time. Yeah, of course. Ms. Bajeen, thanks to you and your colleagues. We appreciate it very much. Ms. Greenwald, Mr. Fullerton, thank you. We'll take the appeal under advisement.